1

2

3

4               UNITED STATES DISTRICT COURT

5                    DISTRICT OF NEVADA

6                          * * *

7   JAMES J. STEGMAIER,                    Case No. 3:13-cv-00461-MMD-VPC

8                        Plaintiff,
                                                         ORDER
9         v.
                                           (Def's Motion to Dismiss – dkt. no. 7)
10  CITY OF RENO, ex rel., its RENO POLICE
    DEPARTMENT, a government entity, et
11  al.,

12                       Defendants.

13

14  **I.     SUMMARY**

15        Before the Court is Defendant City of Reno's Motion to Dismiss ("Motion"). (Dkt.

16  no. 7.) For the reasons stated below, the Motion to Dismiss is granted in part and denied

17  in part.

18  **II.    BACKGROUND**

19        The Complaint is full of factual allegations that are often vague and confusing

20  such that the chronology and purpose of the facts are often difficult to discern. As best

21  as the Court can piece it together, the following are the Complaint's key allegations.

22  Plaintiff was at all relevant times an officer with the Reno Police Department ("RPD"). On

23  or about July 2011, Lt. Amy Newman invited Plaintiff on a lunch date while he was in

24  uniform and in a patrol unit. (Dkt. no. 1 ¶ 9.) On that date, Lt. Newman brought Plaintiff to

25  a home she was considering buying to show Plaintiff a hidden "sex room" in the attic.

26  (*Id.*) Lt. Newman wanted Plaintiff to enter the room, which contained a padlocked door

27  and a single chair in the center, but Plaintiff refused. (*Id.*) On or about August 2011, Lt.

28  Newman asked Plaintiff to accompany her to the Washoe County Coroner's office so

1   that he could take photos with female employees who wanted to see a "cop in motor

2   (knee-high) boots." (*Id.* ¶ 10.) On or about October 2011, Lt. Newman gave Plaintiff a

3   "sock monkey" as a gift and "stated that every 'boy' needs a sock monkey."[1] (*Id.* ¶ 13.)

4         On or about August 2011, Lt. Newman and her partner announced they were

5   "coming out" to Plaintiff and a subordinate. (*Id.* ¶ 11.) Lt. Newman and her partner had a

6   penthouse suite where they engaged in sexual activity and Lt. Newman encouraged

7   Plaintiff to use the suite. (*Id.*) Lt. Newman attempted to have Plaintiff and a subordinate

8   go into the suite, saying that whatever happened in the room would stay in her "circle of

9   trust." (*Id.*) This was shocking to the subordinate and Plaintiff assured the subordinate

10  that it was not his idea and would not happen. (*Id.*) "Plaintiff informed RPD of the incident

11  but RPD took no action to rectify the situation."[2] (*Id.*)

12        During an interview Plaintiff gave in an IA investigation on or about October 2011,

13  Sgt. Myers drew a caricature of Plaintiff "orally copulating another male" and showed it to

14  Plaintiff at the end of his interview. (*Id.* ¶ 14.) On or about November 2011, Sgt. Myers,

15  an officer in IA, made a photo depicting Plaintiff and fellow employee Sgt. Adamson

16  wrestling and sent Sgt. Adamson an email "advising him that IA was aware of his and

17  Plaintiff's wrestling activities . . . ." (*Id.* ¶ 15.) The wrestling photo hung for months in the

18  office above Sgt. Adamson's desk and near Lt. Newman's office. (*Id.*) On or about

19  December 2011, Plaintiff snuck up behind Sgt. Adamson during an interview at a DUI

20  checkpoint and "jovially struck him with a plastic water bottle." (*Id.* ¶ 16.) Lt. Newman

21  forwarded a video of this incident to Deputy Chief Mike Whan and stated "you have to

22  love working with these boys!" (*Id.*) Lt. Newman also forwarded the videos to other City

23  of Reno employees and the video was played during RPD briefings. (*Id.*)

24  ///

25

26      [1]The Complaint also makes vague allegations that Lt. Newman "circulated a photo of a man's penis" and "spread rumors regarding the sexual activities of Plaintiff to City [of Reno] employees." (*Id.* ¶ 17.)

27

28      [2]The Complaint does not identify when and how Plaintiff informed RPD of the incident.

2

1    On or about January 2012, Plaintiff found a file regarding Sgt. Adamson while

2  cleaning out his new desk and gave the file to Lt. Newman.[3] (*Id.* ¶ 18.) The file belonged

3  to DC Whan. (*Id.*) Despite Plaintiff's requests, Lt. Newman never spoke to Plaintiff about

4  the origin of the file and instead turned it over to Sgt. Adamson, creating a conflict. (*Id.*)

5  Plaintiff tried to resolve the incident with Lt. Newman's help but Lt. Newman told Plaintiff

6  that he should have destroyed the file after finding it. (*Id.* ¶ 19.) Lt. Newman and DC

7  Whan met with Sgt. Adamson and led him to believe that the file belonged to Plaintiff.

8  (*Id.* ¶ 20.) In the months following the incident with the file, Lt. Newman generated five

9  (5) different complaints against Plaintiff, each coinciding with dates of potential

10  promotions for Plaintiff. (*Id.* ¶ 21.) Plaintiff had not received negative remarks in past

11  evaluations. (*Id.*)

12    Plaintiff filed a sexual harassment complaint against Lt. Newman on or about April

13  2012. (*Id.* ¶ 22.) On April 24, 2012, Plaintiff was put on administrative leave while IA

14  investigated him regarding an incident "in the office where guns were drawn in a jovial

15  manner, a 'quick draw' replication." (*Id.* ¶ 23.) Sgt. Myers was involved in the

16  investigation. (*Id.*) Plaintiff asked Deputy Chief Evans for advice in handling the

17  investigation and expressed concern over Sgt. Myers' involvement. (*Id.* ¶ 24.) DC Evans

18  told Plaintiff to "fall on the sword" as per Chief Pitts' recommendation in order for Plaintiff

19  to return to work. (*Id.*) DC Evans also advised Plaintiff to pin responsibility for the

20  incident on Lt. Newman as Chief Pitts did not like her. (*Id.* ¶ 27.) Plaintiff requested one-

21  on-one meetings with Chief Pitts "numerous times" but was told that the investigation

22  was going well and to focus on his interview for a promotion. (*Id.* ¶ 29.) In early May

23  2012, Plaintiff spoke with Chief Pitts and asked to return to work but was told to enjoy his

24  time off and "not to worry" about the incident. (*Id.* ¶ 28.) Plaintiff expressed his concerns

25  to DC Evans about IA, Sgt. Meyers being involved in the investigation, being asked to

26

27    [3]The Complaint does not describe the contents of the file but states that it was an "illegal file" compiled by DC Whan regarding private matters involving Sgt. Adamson.

28  (Dkt. no. 1 ¶ 20.)

1   frame testimony about Lt. Newman and Plaintiff's long time on administrative leave. (*Id.*

2   ¶ 30.) However, DC Evans told Chief Pitts that he had not been talking to Plaintiff and

3   when Plaintiff raised some of these issues to Chief Pitts he was told to file a complaint

4   against IA. (*Id.* ¶ 32.)

5        On June 8, 2012, Plaintiff requested an IA interview transcript and received an

6   email from Sgt. Meyers with a pornographic video that said, "yep, you're still gay." (*Id.* ¶

7   35.) Shortly thereafter, Sgt. Myers sent the requested transcripts to Plaintiff. (*Id.*) Plaintiff

8   reported the video to DC Evans who responded, "[i]f you'd just come out of the closet . . .

9   you would have a better lawsuit." (*Id.* ¶ 36.) Plaintiff asked DC Evans to show Chief Pitts

10  the video in order to demonstrate how the IA investigation was compromised but DC

11  Evans only informed Chief Pitts about the video. (*Id.* ¶ 37.) Chief Pitts "sent a message

12  thru DC Evans that he felt he was being extorted by Plaintiff and that he was not going to

13  take any action towards Sgt. Myers for the video incident." (*Id.*) In his message to DC

14  Evans, Chief Pitts also expressed that he thought the video was a joke and that he

15  would "fire Plaintiff if he filed a complaint regarding the video."[4] (*Id.*)

16        On June 14, 2012, the Discipline Review Board ("DRB") made a recommendation

17  of "termination" as to Plaintiff. (*Id.* ¶¶ 34, 37.)

18        Plaintiff reported the video to Jack Campbell, Reno City Attorney, and was told to

19  "keep the cat in the bag" and not report it to anyone. (*Id.* ¶ 38.) During a meeting about

20  the video on June 21, 2012, Campbell stated, "[t]his was all in fun, joking, was it not?"

21  (*Id.* ¶ 42.) Around this time, "[s]upervisory union officials contacted Plaintiff and warned

22  him that Chief Pitts and Jack Campbell were 'circling the wagons' around DC Evans and

23  Sgt. Myers" and that "Plaintiff would be made out to be the 'bad guy.'" (*Id.* ¶ 43.)

24        On July 5, 2012, Plaintiff had a scheduled IA hearing. (*Id.* ¶ 44.) At this hearing,

25  Plaintiff was also to be interviewed about the video incident regarding Sgt. Myers. (*Id.*)

26

27

28        [4]It's not clear from the Complaint when Plaintiff filed an official complaint
    regarding the video.

1   Chief Pitts was supposed to attend but did not. (*Id.*) Instead, he called one of the

2   attendees, Lt. Larson, and asked if Plaintiff had shown up to the meeting. (*Id.*) After

3   being told that Plaintiff was in attendance, Chief Pitts told Lt. Larson to tell Plaintiff that

4   he decided to support the decision of termination. (*Id.*)

5         Plaintiff was "forced to resign to protect more than 20 years of employment

6   benefits." (*Id.*)

7         The Complaint asserts the following claims against the City of Reno:[5] (1) hostile

8   and/or offensive workplace; (2) sexual harassment; (3) retaliation; (4) forced resignation;

9   (5) equal protection pursuant to 42 U.S.C. § 1983; (6) conspiracy pursuant to 42 U.S.C.

10   § 1985; (7) negligent infliction of emotional distress; (8) intentional infliction of emotional

11   distress; (9) failure to follow statutory procedure; and (10) failure to follow departmental

12   procedure. (*See id.* at 15-27.)

13         Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. no. 7.)

14   Plaintiff filed an opposition (dkt. no. 11) and Defendant filed a reply in further support of

15   their motion (dkt. no. 15).

16   **III.   DISCUSSION**

17         **A.   Legal Standard**

18         A court may dismiss a plaintiff's complaint for "failure to state a claim upon which

19   relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must

20   provide "a short and plain statement of the claim showing that the pleader is entitled to

21   relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

22   The Rule 8 notice pleading standard requires Plaintiff to "give the defendant fair notice of

23   what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotation marks

24   and citation omitted). While Rule 8 does not require detailed factual allegations, it

25   demands more than "labels and conclusions" or a "formulaic recitation of the elements of

26

27         [5]The Complaint also names "DOES 1 through 6" in its caption but these doe

28   defendants are not referred to in the body of the Complaint.

1    a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550

2    U.S. at 555). "Factual allegations must be enough to rise above the speculative level."

3    *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must

4    contain sufficient factual matter to "state a claim to relief that is plausible on its face."

5    *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

6          In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to

7    apply when considering motions to dismiss. First, a district court must accept as true all

8    well-pleaded factual allegations in the complaint; however, legal conclusions are not

9    entitled to the assumption of truth. *Id.* at 679. Mere recitals of the elements of a cause of

10   action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a

11   district court must consider whether the factual allegations in the complaint allege a

12   plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's

13   complaint alleges facts that allow a court to draw a reasonable inference that the

14   defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not

15   permit the court to infer more than the mere possibility of misconduct, the complaint has

16   "alleged–but not shown–that the pleader is entitled to relief." *Id.* at 679 (internal quotation

17   marks omitted). When the claims in a complaint have not crossed the line from

18   conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. A

19   complaint must contain either direct or inferential allegations concerning "all the material

20   elements necessary to sustain recovery under *some* viable legal theory." *Id.* at 562

21   (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)).

22          **B.    Analysis**

23          Though styled as a motion to dismiss pursuant to Rule 12(b)(6), Defendant's

24   Motion includes summary judgment style evidence, including declarations and

25   documentary evidence. Whenever a district court looks beyond the pleadings in

26   evaluating a Rule 12(b)(6) motion to dismiss, the motion must be treated as one for

27   summary judgment under Fed. R. Civ. P. 56. *Portland Retail Druggists Ass'n v. Kaiser*

28   *Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981). Defendant has separately filed a

1   Motion for Summary Judgment (dkt. no. 26) that incorporates the exhibits submitted with

2   the instant Motion. Defendant's Motion for Summary Judgment has not yet been fully

3   briefed. The Court determines it is therefore appropriate to treat the instant Motion as a

4   Rule 12(b)(6) motion to dismiss and not look outside the pleadings in making its

5   determination. This approach allows the parties to fully brief the pending Motion for

6   Summary Judgment and the Court to address Defendant's summary judgment

7   arguments in due course.

8                    **1.      Sexual Harassment**

9        The Complaint's first cause of action is for "Hostile and/or Offensive Work

10  Environment" in which Plaintiff alleges that he was "routinely subjected to sexual

11  harassment in a hostile and/or offensive work environment" and Defendant "knew, or

12  should have known, that Plaintiff was subjected to such an environment but failed to

13  implement any timely or remedial action." (Dkt. no. 1 ¶¶ 48, 51.) The Complaint's second

14  cause of action is for "Sexual Harassment" in which Plaintiff alleges that Plaintiff "was

15  repeatedly and routinely subjected to sexual harassment which a reasonable person,

16  similarly situated would have found to be hostile and/or offensive" and Defendant "knew,

17  or should have known, that Plaintiff was subjected to such an environment but failed to

18  implement any timely or remedial action." (*Id.* ¶¶ 54, 57.) Plaintiff's first and second

19  claims thus appear to be duplicative as both are premised on hostile environment

20  harassment.

21       "Hostile environment" harassment refers to situations where employees work in

22  offensive or abusive environments. *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991).

23  "Title VII affords employees the right to work in an environment free from discriminatory

24  intimidation, ridicule, and insult." *Meritor Sav. Bank, SFV v. Vinson*, 477 U.S. 57, 65

25  (1986) (citation omitted). A hostile environment sexual harassment claim has three

26  elements: (1) the plaintiff must show "he or she was subjected to sexual advances,

27  requests for sexual favors or other verbal or physical conduct of a sexual nature, (2) that

28  this conduct was unwelcome, and (3) that the conduct was sufficiently severe or

1    pervasive to alter the conditions of the victim's employment and create an abusive

2    working environment." *Ellison*, 924 F.2d at 875–76 (citation omitted). Whether an

3    environment is "hostile" or "abusive" is a matter that "can be determined only by looking

4    at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "These may

5    include the frequency of the discriminatory conduct; its severity; whether it is physically

6    threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

7    interferes with an employee's work performance." *Id.*

8         "An employer is liable for a hostile environment created by a plaintiff's co-worker if

9    it knew or should have known about the misconduct and failed to take "prompt and

10    effective remedial action." *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d

11    417, 421 (9th Cir. 2013) (citation omitted). However, where harassment by a supervisor

12    is alleged, an employer is subject to vicarious liability for the "actionable hostile

13    environment created by the supervisor with immediate (or successively higher) authority

14    over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). A plaintiff

15    may assert same-sex sexual harassment claims. *Oncale v. Sundowner Offshore

16    Services, Inc.*, 523 U.S. 75, 79 (1998); *see also Tanner v. Prima Donna Resorts, Inc.*,

17    919 F. Supp. 351, 354 (D. Nev. 1996).  A plaintiff must be able to show that "the conduct

18    at issue was not merely tinged with offensive sexual connotations, but actually

19    constituted 'discrimina[tion] . . . because of . . . sex.'" *Oncale*, 523 U.S. at 81. For

20    example, harassment of a male employee by co-workers or supervisors for failure to

21    conform to gender-based stereotypes could create a hostile work environment. *See

22    Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 874–875 (9th Cir. 2001).

23         Plaintiff's sexual harassment claims fail. The Complaint does not allege that the

24    unwanted sexual conduct was made because of Plaintiff's gender. *See id.*

25         The facts alleged in the Complaint, while offensive, do not allow the Court to draw

26    a reasonable inference that the unwanted sexual conduct was because Plaintiff is male.

27    For example, the Complaint does not allege that Lt. Newman or Sgt. Myers attempted to

28    solicit sex or sexualize Plaintiff because he is male, or that Plaintiff's work environment

8

1    was different for female employees, or that the unwanted sexual conduct was a result of

2    Plaintiff's failure, perceived or actual, to conform to male stereotypes. Plaintiff does not

3    allege any facts to suggest the conduct described in the Complaint, such as the

4    pornographic video emailed by Sgt. Myers or Lt. Newman's attempt to have Plaintiff and

5    a subordinate use her penthouse room, was directed at Plaintiff because of his gender.

6    Plaintiff's sexual harassment claims premised on hostile work environment (first

7    and second causes of action) are dismissed.

8                    **2.    Retaliation**

9    To establish a prima facie case of retaliation, Plaintiff must show that "(1) [he]

10   engaged in a protected activity, (2) [he] suffered an adverse employment action, and (3)

11   there was a causal link between [his] activity and the employment decision*." Raad v.*

12   *Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1196-97 (9th Cir. 2003) (citation

13   omitted). "That an employer's actions were caused by an employee's engagement in

14   protected activities may be inferred from 'proximity in time between the protected action

15   and the allegedly retaliatory employment decision.'" *Ray v. Henderson*, 217 F.3d 1234,

16   1244 (9th Cir. 2000) (*quoting Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987)).

17   The Complaint alleges that "[b]eginning after Plaintiff complained of the

18   harassment and hostile work environment to his superiors, management and eventually,

19   the City of Reno, the acts Plaintiff complained of escalated in both degree and

20   frequency." (Dkt. no. 1 ¶ 60.) The mere fact that the Complaint alleges that Plaintiff

21   complained of sexual harassment by Lt. Newman and Sgt. Myers while also navigating

22   an IA investigation that resulted in Plaintiff's resignation is not enough to state a

23   retaliation claim. The Complaint frequently fails to identify the conduct that Plaintiff

24   believes to be "adversary" and draw a connection to Plaintiff's hostile work environment

25   complaints. Plaintiff further fails to specify the date of his complaints in relation to the

26   dates of potential adverse employment actions.

27   For example, the Complaint alleges that Plaintiff filed a sexual harassment claim

28   against Lt. Newman in April 2012. (*Id.* ¶ 22.) The Complaint then alleges that an

1   investigation into the "quick draw' incident by IA commenced and Plaintiff was put on

2   administrative leave on April 24, 2012. (*Id.* ¶ 23.) To the extent that Plaintiff wishes the

3   Court to view Plaintiff's placement on administrative leave as an adverse employment

4   action caused by his sexual harassment complaint against Lt. Newman, Plaintiff fails

5   because the Complaint does not allege facts that would allow such an inference to be

6   drawn. Specifically, the Complaint does not allege that Plaintiff's sexual harassment

7   claim was made *before* the commencement of the IA investigation or Plaintiff's

8   administrative leave.

9         However, the Complaint's allegations as to the pornographic video emailed to

10   Plaintiff by Sgt. Myers on June 8, 2010, are more successful. The Complaint alleges that

11   Plaintiff reported the video to DC Evans and asked him to show the video to Chief Pitts.

12   It alleges that DC Evans told Plaintiff that Chief Pitts did not want to see the video, would

13   not take action against Sgt. Myers for the video and would fire Plaintiff if it was reported.

14   Plaintiff also reported the video to Campbell and met with Campbell to discuss the video

15   on June 21, 2012, and was instructed to keep the video incident under wraps. Plaintiff

16   alleges that he was contacted by a union official and told that Chief Pitts and Campbell

17   were protecting Sgt. Myers and would make Plaintiff out to be the "bad guy." At a hearing

18   on July 5, 2012, Chief Pitts revealed, through Lt. Larson, that he would support

19   termination of Plaintiff.

20         Defendant correctly points out that, as established by the Supreme Court in

21   *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 2528

22   (2013), "Title VII retaliation claims require proof that the desire to retaliate was the but-for

23   cause of the challenged employment action." (*See* dkt. no. 7 at 18-19.) However, the

24   Plaintiff has alleged sufficient facts that allow the Court to draw a reasonable inference

25   that but for Plaintiff's decision to report the video, Chief Pitts would not have supported

26   termination. The Complaint alleges that Plaintiff spoke to Chief Pitts in May 2012, the

27   month before the video incident, and Chief Pitts told him "not to worry" about the

28   investigation and to enjoy his time off. Taking this fact as true and construing it in the

1  light most favorable to Plaintiff, the Complaint has sufficiently alleged that Chief Pitts

2  changed his view of the "quick draw" incident after Plaintiff reported the video.

3     The Court determines that Plaintiff has stated a claim for retaliation (second claim

4  for relief).

5          **3.**  **Remaining Claims**

6     As to Plaintiff's fourth and tenth claims for relief, the Court is not aware of any

7  causes of action for "forced resignation" or "failure to follow departmental procedure."

8  Plaintiff does not provide any state or federal statutory bases for these claims. Defendant

9  guesses that Plaintiff intends to state a "constructive discharge" claim and not a "forced

10  resignation" claim. (Dkt. no. 7 at 20.) While Plaintiff's opposition appears to support this

11  reading of the Complaint, the Rule 8 notice pleading standard requires Plaintiff to "give

12  the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

13  *Twombly*, 550 U.S. at 555. As the Court cannot determine the legal basis for Plaintiff's

14  "forced resignation" and "failure to follow departmental procedure" claims from the face

15  of the Complaint, they are dismissed pursuant to Rule 8.

16     As his fifth and sixth claims for relief, Plaintiff fails to assert claims under 42

17  U.S.C. §§ 1983 and 1985, respectively. With regard to Plaintiff's § 1983 claim,

18  "Congress did not intend municipalities to be held liable unless action pursuant to official

19  municipal policy of some nature caused a constitutional tort." *Monell v. N.Y.C. Dept. of*

20  *Social Servs.*, 436 U.S. 658, 691 (1978). *Monell* instructs that in order to impose liability

21  on a municipality or a subdivision of the municipality under § 1983, a plaintiff must

22  "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty.*

23  *Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997). The Complaint does

24  not identify a municipal policy or custom that caused Plaintiff's injury. Plaintiff's

25  conspiracy claim under § 1985 fails because Plaintiff has not sufficiently stated a claim

26  under § 1983. *See Cassettari v. Nev. Cnty., Cal.*, 824 F.2d 735, 739 (9th Cir.1987)

27  (dismissing a § 1985 claim where the claim was based on the same insufficient

28  allegations as plaintiff's § 1983 claim). The Court also notes that Plaintiff does not

1    identify the constitutional violation at issue in his § 1983 claim and does not identify any

2    conspirators in his § 1985 claim.

3    Plaintiff's emotional distress claims (seventh and eighth claims for relief) are

4    insufficiently pled. To recover for negligent infliction of emotional distress under Nevada

5    law, Plaintiff must establish that he either suffered a physical impact or "serious

6    emotional distress." *See Olivero v. Lowe*, 995 P.2d 1023, 1026-27 (Nev. 2000). To

7    recover for intentional infliction of emotional distress, Plaintiff must show that he suffered

8    "extreme or severe" emotional distress. *See Miller v. Jones*, 970 P.2d 571, 577 (Nev.

9    1998) (citation omitted). Plaintiff only alleges that he is "unable to sleep" and states

10   without factual support that he "has suffered emotional and physical distress." (Dkt. no. 1

11   ¶ 107.) This amounts to no more than a recitation of the elements without factual

12   support.

13   Lastly, Plaintiff's ninth claim for relief for "failure to follow departmental procedure"

14   asserts that Defendant violated two statutory provisions, NRS 289.020(2) and NRS

15   289.057(3)(a). However, NRS 289.120 states that "[a]ny peace officer aggrieved by an

16   action of the employer of the peace officer in violation of this chapter may, after

17   exhausting any applicable internal grievance procedures, grievance procedures

18   negotiated pursuant to chapter 288 of NRS and other administrative remedies, apply to

19   the district court for judicial relief." The Complaint does not allege that Plaintiff exhausted

20   his internal grievance procedures.

21                          **4.      Leave to Amend**

22   Plaintiff asks for leave to amend. (Dkt. no. 11 at 15.) After the period

23   for leave to amend as a right has expired (as it has here), a party must either obtain the

24   other party's consent or seek leave of court to amend a pleading. Fed. R. Civ. P.

25   15(a)(2). The court should give leave to amend freely when justice requires, though

26   leave need not be granted where amendment: "(1) prejudices the opposing party; (2) is

27   sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."

28   ///

1    *Amerisource Bergen Corp. v. Dialysist W., Inc.,* 465 F.3d 946, 951 (9th Cir.

2    2006) (citation omitted).

3          In this case the opposing party is not prejudiced because Plaintiff has not yet filed

4    an amended complaint and, to the extent Plaintiff is unable to cure the deficiencies in the

5    Complaint, the Court will dismiss those claims with prejudice. Further, there is no

6    indication that Plaintiff seeks to amend in bad faith or that granting leave to amend will

7    produce an undue delay. The Court determines that amendment would not be futile as

8    the Complaint alleges facts that can form the basis of valid claims if properly pled. Good

9    cause appearing, leave to amend is granted.

10   **IV.    CONCLUSION**

11         The Court notes that the parties made several arguments and cited to several

12   cases not discussed above. The Court has reviewed these arguments and cases and

13   determines that they do not warrant discussion as they do not affect the outcome of

14   Defendant's Motion.

15         It is hereby ordered that Defendant's Motion to Dismiss (dkt. no. 7) is granted in

16   part and denied in part. Plaintiff's first, second, fourth, fifth, sixth, seventh, eighth, ninth

17   and tenth claims for relief are dismissed. Plaintiff's third claim for relief, retaliation, may

18   proceed on the theory that Chief Pitts' decision to support termination of Plaintiff was

19   caused by Plaintiff's reporting of the pornographic video emailed to Plaintiff by Sgt.

20   Myers.

21         It is further ordered that Plaintiff may file an amended complaint within fifteen (15)

22   days. Failure to file an amended complaint will result in dismissal of Plaintiff's first,

23   second, fourth, fifth, sixth, seventh, eighth, ninth and tenth claims for relief with prejudice.

24

         ENTERED THIS 18th day of September 2014.

25

26

27                                        MIRANDA M. DU
                                          UNITED STATES DISTRICT JUDGE
28