1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7    JAMES J. STEGMAIER,                              Case No. 3:13-cv-00461-MMD-VPC

8                                    Plaintiff,

9        v.                                                           ORDER

10   CITY OF RENO, ex rel., its RENO POLICE          (Def's Motion to Dismiss – dkt. no. 7)
     DEPARTMENT, a government entity, et
11   al.,

12                                  Defendants.

13   **I.      SUMMARY**

14           Before the Court is Defendant City of Reno's Motion to Dismiss the First

15   Amended Complaint ("Motion"). (Dkt. no. 57.) For the reasons stated below, the Motion

16   is granted in part and denied in part.

17   **II.     BACKGROUND**

18           As in the Complaint, the factual allegations in the First Amended Complaint

19   ("FAC") (dkt. no. 45) are often vague and confusing, such that the chronology and

20   purpose of the facts are difficult to discern. At the outset, the Court notes it is troubling

21   that Plaintiff chose not to better organize or streamline his factual allegations. Instead,

22   the core factual allegations in the FAC are substantially similar to those in the Complaint

23   with some language altered. The Court summarizes the factual allegations in the FAC

24   below.

25           Plaintiff was at all relevant times an officer with the Reno Police Department

26   ("RPD"). On or about July 2011, Lt. Amy Newman invited Plaintiff on a lunch date while

27   he was in uniform and in a patrol unit. (Dkt. no. 45 ¶ 9.) On that date, Lt. Newman

28   brought Plaintiff to a home she was considering buying to show Plaintiff a hidden "sex

room" in the attic. (*Id.*) Lt. Newman wanted Plaintiff to enter the room, which contained a padlocked door and a single chair in the center, but Plaintiff refused. (*Id.*) On or about August 2011, Lt. Newman asked Plaintiff to accompany her to the Washoe County Coroner's office so that he could take photos with female employees who wanted to see a "cop in motor (knee-high) boots." (*Id.* ¶ 10.) On or about October 2011, Lt. Newman gave Plaintiff a "sock monkey" as a gift and "stated that every 'boy' needs a sock monkey." (*Id.* ¶ 13.) Lt. Newman gave the sock monkey to Plaintiff with "a picture of a donkey whose penis was touching the ground" and "allowed her partner to access Plaintiff's computer so that when keyed, the sound of a donkey braying would be made." (*Id.*)[1]

On or about August 2011, Lt. Newman and her partner announced they were "coming out" to Plaintiff and a subordinate. (*Id.* ¶ 11.) Lt. Newman and her partner had a penthouse suite where they engaged in sexual activity and Lt. Newman encouraged Plaintiff to use the suite. (*Id.*) Lt. Newman attempted to have Plaintiff and a subordinate go into the suite, saying that whatever happened in the room would stay in her "circle of trust." (*Id.*) This was shocking to the subordinate and Plaintiff assured the subordinate that it was not his idea and would not happen. (*Id.*) "Plaintiff informed DC Evans of the incident but RPD took no action to rectify the situation."[2] (*Id.*)

From 2010 through January 2012, Lt. Newman "allowed" photos of Plaintiff to be manufactured and participated in their manipulation. (*Id.* ¶ 12.) These photos depicted Plaintiff as a homosexual and were manufactured by RPD Internal Affairs Unit, including Sgt. Myers. (*Id.*) Lt. Newman "condoned" Sgt. Meyer's practice of hanging sexual photographs and drawings of Plaintiff in Plaintiff's cubicle and on the walls. (*Id.*)

///

_____

[1]The Complaint also makes vague allegations that Lt. Newman "circulated a photo of a man's penis" and "spread rumors regarding the sexual activities of Plaintiff to City [of Reno] employees." (*Id.* ¶ 17.)

[2]The FAC does not identify when Plaintiff informed DC Evans of the incident.

1       During an interview Plaintiff gave in an IA investigation on or about October 2011,

2  Sgt. Myers drew a caricature of Plaintiff "orally copulating another male" and showed it to

3  Plaintiff at the end of his interview. (*Id.* ¶ 14.) On or about November 2011, Sgt. Myers,

4  an officer in IA, made a photo depicting Plaintiff and fellow employee Sgt. Adamson

5  wrestling and sent Sgt. Adamson an email advising him that IA "was aware of his and

6  Plaintiff's wrestling activities . . . ." (*Id.* ¶ 15.) The wrestling photo hung for months in the

7  office above Sgt. Adamson's desk and near Lt. Newman's office. (*Id.*) On or about

8  December 17, 2011, Plaintiff snuck up behind Sgt. Adamson during an interview at a

9  DUI checkpoint and "jovially struck him with a plastic water bottle." (*Id.* ¶ 16.) Lt.

10  Newman forwarded a video of this incident to DC Whan and stated "you have to love

11  working with these boys!" (*Id.*) Lt. Newman also forwarded the videos to other City of

12  Reno employees and the video was played during RPD briefings. (*Id.*)

13       On or about January 2012, Plaintiff found a file regarding Sgt. Adamson while

14  cleaning out his new desk and gave the file to Lt. Newman.[3] (*Id.* ¶ 18.) The file belonged

15  to DC Whan. (*Id.*) Despite Plaintiff's requests, Lt. Newman never spoke to Plaintiff about

16  the origin of the file and instead turned it over to Sgt. Adamson, creating a conflict. (*Id.*)

17  Plaintiff tried to resolve the incident with Lt. Newman's help but Lt. Newman told Plaintiff

18  that he should have destroyed the file after finding it. (*Id.* ¶ 19.) Lt. Newman and DC

19  Whan met with Sgt. Adamson and led him to believe that the file belonged to Plaintiff.

20  (*Id.* ¶ 20.) Plaintiff reported this incident to Chief Pitts and Chief Pitts said he would refer

21  the report to DC Evans but no investigation ensued. (*Id.* ¶ 21.)

22       In the months following this incident, Lt. Newman generated five (5) different

23  complaints against Plaintiff, each coinciding with dates of potential promotions for

24  Plaintiff. (*Id.* ¶ 22.) Plaintiff had not received negative remarks in past evaluations. (*Id.*)

25  ///

26

---

27       [3]The FAC does not describe the contents of the file but states that it was an

28  "illegal file" compiled by DC Whan regarding private matters involving Sgt. Adamson. (*Id.* ¶ 20.)

1    Plaintiff filed a sexual harassment complaint against Lt. Newman on or about April

2  2012.[4] (*Id.* ¶ 23.) On April 24, 2012, Plaintiff was put on administrative leave while IA

3  investigated him regarding an incident in which Plaintiff was practicing a "quick draw"

4  technique with his pistol. (*Id.* ¶ 25.) This complaint was made by Det. Follett at Lt.

5  Newman's urging. (*Id.*) Plaintiff asked DC Evans for advice in handling the investigation

6  and expressed concern over Sgt. Myers' behavior. (*Id.* ¶ 26.) DC Evans told Plaintiff to

7  "fall on the sword" as per Chief Pitts' recommendation in order for Plaintiff to return to

8  work. (*Id.*) DC Evans also advised Plaintiff to pin responsibility for the incident on Lt.

9  Newman as Chief Pitts did not like her. (*Id.* ¶ 29.) Plaintiff requested one-on-one

10  meetings with Chief Pitts "numerous times" but never received a response or was told by

11  union steward Al Snover that Chief Pitts declined to meet. (*Id.* ¶ 31.) In early May 2012,

12  Plaintiff spoke with Chief Pitts and asked to return to work but was told to enjoy his time

13  off and "not to worry" about the incident. (*Id.* ¶ 30.) DC Evans lied to Chief Pitts and told

14  Chief Pitts that he was not speaking with Plaintiff. (*Id.* ¶ 34.)

15    Plaintiff expressed his concerns to DC Evans about Sgt. Meyers' drawing. (*Id.* ¶

16  32.) DC Evans told Plaintiff that he attempted to tell Chief Pitts that Plaintiff's leave was

17  unnecessary but Chief Pitts was "difficult to reason with" on this issue.[5] (*Id.*) Plaintiff also

18  asked DC Evans to pay back $8,000 that DC Evans owed him and DC Evans said he

19  would pay it back but never did. (*Id.* ¶ 33.)

20    On June 8, 2012, Plaintiff requested an IA interview transcript and received an

21  email from Sgt. Meyers with a pornographic video that said "yep, you're still gay." (*Id.* ¶

22  38.) Shortly thereafter, Sgt. Myers sent the requested transcripts to Plaintiff. (*Id.*) Plaintiff

23  reported the video to DC Evans who responded, "[i]f you'd just come out of the closet . . .

24  you would have a better lawsuit." (*Id.* ¶ 39.) Plaintiff asked DC Evans to show Chief Pitts

25  _____

26    [4]The FAC also alleges that IA dismissed a "key part" of an investigation against
Lt. Newman and that this "cover up" was discovered and reported to IA by Plaintiff. (*Id.* ¶
27  24.)

28    [5]It is not clear when this conversation took place.

the video in order to demonstrate how the IA investigation was compromised but DC Evans said he would show the video to Chief Pitts when the time was right. (*Id.*) After the Plaintiff reported the video to IA, Chief Pitts "sent a message thru DC Evans that he felt he was being extorted by Plaintiff and that he was not going to take any action towards Sgt. Myers for the video incident." (*Id.* ¶ 40.) In his message to DC Evans, Chief Pitts also expressed that he thought the video was a joke and that he would fire Plaintiff if he chose to file a complaint about it.[6] (*Id.*)

On June 14, 2012, the Discipline Review Board ("DRB") made a recommendation of "termination" as to Plaintiff. (*Id.* ¶ 40.)

One June 21, 2012, Sgt. Myers informed Plaintiff that his rebuttal had upset the DRB and resulted in the termination decision. (*Id.* ¶ 44.) Lt. Robinson called DC Evans and told him that Plaintiff had been looking at minimal suspension but his rebuttal changed the DRB's decision. (*Id.*) Plaintiff's rebuttal outlined what he believed to be a compromised IA investigation. (*Id.*)

Plaintiff reported the video to Jack Campbell, Reno City Attorney, and was told to "keep the cat in the bag" and not report it to anyone.[7] (*Id.* ¶ 41.) During a meeting about the video on June 21, 2012, Campbell stated, "[t]his was all in fun, joking, was it not?" (*Id.* ¶ 45.) Around this time, "[s]upervisory union officials contacted Plaintiff and warned him that Chief Pitts and Jack Campbell were 'circling the wagons' around DC Evans and Sgt. Myers" and that "Plaintiff would be made out to be the 'bad guy.'" (*Id.* ¶ 46.)

On July 5, 2012, Plaintiff had a scheduled IA hearing. (*Id.* ¶ 47.) At this hearing, Plaintiff was also to be interviewed about Sgt. Myers' harassment. (*Id.*) Chief Pitts was supposed to attend but did not. (*Id.*) Instead, he called one of the attendees, Lt. Larson, and asked if Plaintiff had shown up to the meeting. (*Id.*) After being told that Plaintiff was ///

---

[6]It's not clear when Plaintiff filed an official complaint regarding the video.

[7]The timing of this report is unclear.

1  in attendance, Chief Pitts told Lt. Larson to tell Plaintiff that he decided to support the

2  decision of termination. (*Id.*)

3      Plaintiff was "forced to resign to stop the retaliation, including what appeared to

4  Plaintiff to be inevitable termination." (*Id.* ¶ 47.)

5      The Complaint asserts the following claims against the City of Reno:[8] (1) hostile

6  work environment; (2) retaliation; (3) tortious discharge; (4) equal protection violation

7  pursuant to 42 U.S.C. § 1983; (5) first amendment violation pursuant to 42 U.S.C. §

8  1983; (6) due process violation pursuant to 42 U.S.C. § 1983; (7) negligent infliction of

9  emotional distress; and (8) intentional infliction of emotional distress. (*See id.* at 18-26.)

10      Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. no. 57.)

11  Plaintiff filed an opposition (dkt. no. 58) and Defendant filed a reply in further support of

12  their motion (dkt. no. 60).

13  **III.    DISCUSSION**

14      **A.    Legal Standard**

15      A court may dismiss a plaintiff's complaint for "failure to state a claim upon which

16  relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must

17  provide "a short and plain statement of the claim showing that the pleader is entitled to

18  relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

19  The Rule 8 notice pleading standard requires Plaintiff to "give the defendant fair notice of

20  what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotation marks

21  and citation omitted). While Rule 8 does not require detailed factual allegations, it

22  demands more than "labels and conclusions" or a "formulaic recitation of the elements of

23  a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550

24  U.S. at 555). "Factual allegations must be enough to rise above the speculative level."

25  *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must

26

27  ———————————————

28      [8]The FAC also names "DOES 1 through 6" in its caption but these doe defendants
    are not referred to in the body of the FAC.

contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged — but not shown — that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)).

### B.   Analysis

The parties begin their briefs by arguing over the status of the claims in Plaintiff's initial Complaint. After dismissing all but one of the claims for relief asserted in the Complaint, the Court granted Plaintiff leave to file an amended complaint. (Dkt. no. 31 at 13.) The Court noted that if Plaintiff chose not to file an amended complaint, the dismissed claims would be dismissed with prejudice and Plaintiff would be permitted to proceed on the remaining claim only. (*Id.*) Plaintiff chose to file an amended complaint, the FAC, which is presently before this Court. The FAC is now the operative complaint. Only the claims asserted in the FAC are presently before the Court and the Court will not, and need not, take any further action as to the claims in the initial Complaint.

Defendant argues that the claims asserted in the FAC go well beyond what the Court permitted in granting leave to amend. The Court agrees. In Plaintiff's opposition to Defendant's motion to dismiss the initial Complaint, Plaintiff asked for leave to amend so that he could have an "opportunity to cure any and all deficiencies" the Court finds in the Complaint. (Dkt. no. 11 at 15.) In the order granting the motion to dismiss in part, the Court granted Plaintiff's request for leave, noting that "to the extent Plaintiff is unable to cure the deficiencies in the Complaint, the Court will dismiss those claims with prejudice." (Dkt. no. 31 at 13.) In the Court's order denying reconsideration, the Court stated that it "is not permitting new claims to be filed, but merely allowing amendment of claims asserted in the original complaint." (Dkt. no. 33 at 1.)

The scope of the Court's grant of leave to amend was limited. Plaintiff asked for leave to cure the deficiencies in the Complaint. That is precisely what was granted and the Court made it clear that Plaintiff was not given permission to add new claims. Nevertheless, the FAC asserts claims not asserted in the initial Complaint. These new claims include the FAC's third, fifth, and sixth claims for relief, which are claims for tortious discharge, violation of first amendment rights, and violation of due process rights, respectively. In his opposition to the Motion, Plaintiff appears to acknowledge that he was not permitted to assert these new claims, recognizing that he "did overlook the statement of the Court that it is not permitting new claims to be filed." (Dkt. no. 58 at 4.) Plaintiff asks the Court to reconsider its past orders or treat the new claims as requests for leave to amend. (*Id.* at 4-5.) The Court will do neither. It is procedurally improper to request reconsideration of a past order in an opposition to a motion to dismiss. It is Plaintiff's responsibility to read the orders entered by this Court and seek reconsideration or clarification if desired. It is also improper for Plaintiff to use the leave to amend provided for in the Court's order as an open invitation to assert new claims.

As the Court did not give Plaintiff leave to amend to assert new claims, the third, fifth, and sixth claims for relief in the FAC are stricken pursuant to Fed. R. Civ. P. 12(f)(1).

8

Further, the Court will not grant leave to amend for Plaintiff to add the additional claims. Plaintiff states that he "took the opportunity to construct new theories" that would not cause further delay because the completed discovery would be applicable to the new claims. (Dkt. no. 58 at 4.) Denying leave to amend is proper "where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (citing *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990)). Here, Plaintiff is attempting to bring additional claims based on new legal theories premised on facts nearly identical to those in the initial Complaint. Plaintiff has not provided an explanation for why these claims were not asserted in the initial Complaint. The only apparent explanation is that the Court dismissed nearly all of the Complaint's claims and Plaintiff took the Court's leave to amend as an opportunity to develop new legal theories of liability. To the extent that Plaintiff asks the Court to construe the additional claims as a request for leave to amend, the Court denies Plaintiff's request.

The Court will now address the remaining claims for relief.

### 1.   Sexual Harassment

The Complaint's first cause of action is for "Hostile Work Environment" in which Plaintiff alleges that he was "repeatedly and routinely subjected to sexual harassment that created a hostile and abusive work environment and one which a reasonable person similarly situated would have found to be hostile and abusive." (Dkt. no. 45 ¶ 58.) Defendant asks the Court to dismiss this claim for failing to cure the deficiency the Court identified in the initial Complaint. (Dkt. no. 57 at 6-7.)

"Hostile environment" harassment refers to situations where employees work in offensive or abusive environments. *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991). "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, SFV v. Vinson*, 477 U.S. 57, 65 (1986) (citation omitted). Title VII is not a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). A hostile environment sexual harassment claim has

three elements: (1) the plaintiff must show "he or she was subjected to sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ellison*, 924 F.2d at 875–76 (citation omitted). Whether an environment is "hostile" or "abusive" is a matter that "can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

"An employer is liable for a hostile environment created by a plaintiff's co-worker if it knew or should have known about the misconduct and failed to take "prompt and effective remedial action." *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 421 (9th Cir. 2013) (citation omitted). However, where harassment by a supervisor is alleged, an employer is subject to vicarious liability for the "actionable hostile environment created by the supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). A plaintiff may assert same-sex sexual harassment claims. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79 (1998); *see also Tanner v. Prima Donna Resorts, Inc.*, 919 F. Supp. 351, 354 (D. Nev. 1996). A plaintiff must be able to show that "the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] . . . because of . . . sex.'" *Oncale*, 523 U.S. at 81. For example, harassment of a male employee by co-workers or supervisors for failure to conform to gender-based stereotypes could create a hostile work environment. *See Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 874–875 (9th Cir. 2001).

In its previous order, the Court determined that Plaintiff's sexual harassment claims failed because the Complaint did not sufficiently allege that the unwanted sexual conduct was made because of Plaintiff's gender. (dkt. no. 31 at 8-9.) The Court stated:

> The facts alleged in the Complaint, while offensive, do not allow the Court to draw a reasonable inference that the unwanted sexual conduct was because Plaintiff is male. For example, the Complaint does not allege that Lt. Newman or Sgt. Myers attempted to solicit sex or sexualize Plaintiff because he is male, or that Plaintiff's work environment was different for female employees, or that the unwanted sexual conduct was a result of Plaintiff's failure, perceived or actual, to conform to male stereotypes. Plaintiff does not allege any facts to suggest the conduct described in the Complaint, such as the pornographic video emailed by Sgt. Myers or Lt. Newman's attempt to have Plaintiff and a subordinate use her penthouse room, was directed at Plaintiff because of his gender.

(*Id.*) The FAC fails to remedy this deficiency. Instead of alleging additional facts that would allow this Court to draw a reasonable inference that the unwanted sexual conduct occurred because Plaintiff is male, the FAC merely adds conclusory assertions that the conduct was directed at Plaintiff because he was male. The FAC asserts that "[m]uch of [the conduct] was the result of a perceived failure of Plaintiff to conform to male stereotypes in a para-military organization." (Dkt. no. 45 at 18.) But this conclusion lacks a factual basis. In *Nichols*, the plaintiff asserted that the verbal abuse directed towards him was based upon the perception that he is effeminate. *Nichols*, 256 F.3d at 874. In this case, the FAC does not assert that Plaintiff was perceived to be effeminate, and the facts do not suggest that Plaintiff was subject to offensive conduct because he was perceived to be effeminate. The FAC's conclusion that Plaintiff was perceived as failing to fit a male stereotype is thus unsupported by factual allegations. *See Iqbal*, 556 U.S. at 678-79. While the Court can speculate that the offensive conduct occurred because of Plaintiff's nonconformity with traditional sexual stereotypes, that alone does not make a cognizable claim. *See Walsh v. Tehachapi v. Unified School Dist.*, 827 F. Supp. 2d 1107, 1115 (E.D. Cal. 2011) (citing *Twombly*, 550 U.S. at 555).

As the deficiency in the Complaint was not remedied, Plaintiff's sexual harassment claim premised on hostile work environment is dismissed with prejudice.

## 2.   Retaliation

The FAC's second claim for relief is a claim of retaliation. (Dkt. no. 45 at 20.) Defendant does not move to dismiss this claim.

*///*

### 3.     Equal Protection

As his fourth claim for relief, Plaintiff alleges an equal protection violation under 42 U.S.C. § 1983. Defendant asks the Court to dismiss this claim because it is a new claim not found in the initial Complaint. (Dkt. no. 57 at 5.) Defendant is incorrect. Plaintiff asserted an equal protection claim pursuant to § 1983 in the initial Complaint (dkt. no. 1 at 24) and the Court dismissed it in its previous order (dkt. no. 31 at 11-12). Defendant also asks the Court to dismiss this claim for failure to state a claim. (Dkt. no. 57 at 8-11.) 42 U.S.C. § 1983 does not create any substantive rights, but instead provides a vehicle for plaintiffs to bring federal constitutional and statutory challenges against actions by state and local officials. *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To state a claim under § 1983, a plaintiff must allege that: (1) the defendants deprived plaintiff of a federal constitutional or statutory right; and (2) the defendants acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff alleges that he was discriminated against on the basis of his gender. (Dkt. no. 45 at 24.) However, "an equal-protection claim must assert that a plaintiff was treated differently than other similarly situated persons and that the disparate treatment was intentional." *Recinto v. U.S. Dep't of Veterans Affairs*, 706 F.3d 1171, 1177 (9th Cir. 2013) (citation omitted). "To avoid dismissal, a plaintiff must plausibly suggest the existence of a discriminatory purpose." *Id.* (citing *Iqbal*, 556 U.S. at 677). As the Court found above with regard to Plaintiff's Title VII sexual harassment claim, the FAC does not sufficiently allege that Plaintiff was discriminated against because he is male. The FAC's equal protection claim fails for the same reason. The FAC fails to sufficiently allege that Plaintiff was treated differently *because* of his gender.

Further, with regard to Plaintiff's § 1983 claim, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. N.Y.C. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). *Monell* instructs that in order to impose liability on a municipality or a subdivision of the municipality under § 1983, a plaintiff must "identify a municipal 'policy'

or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997).

In its previous order, the Court found that the Complaint did not identify a municipal policy or custom that caused Plaintiff's injury. (Dkt. no. 31 at 11-12.) The FAC fails to remedy this deficiency.

The FAC alleges that Chief Pitts was a final policymaker for Defendant and he delegated that authority to his deputy chiefs and lieutenants. (Dkt. no. 45 at 24.) Even accepting that as true, the FAC still lacks factual allegations demonstrating that Plaintiff's alleged equal protection violation was "the result of a custom or practice of the [City of Reno] or that the custom or practice was the 'moving force' behind his constitutional deprivation." *See Dougherty v. City of Covina*, 654 F.3d 892, 901 (9th Cir. 2011). It is not clear to the Court what the alleged custom or policy is and, further, how it caused Plaintiff's equal protection violation.

As the deficiency in the Complaint was not remedied, Plaintiff's equal protection claim is dismissed with prejudice.

### 4.    Negligent and Intentional Infliction of Emotional Distress

Plaintiff's seventh and eighth claims for relief are emotional distress claims. Defendant argues that the FAC fails to cure the deficiencies identified in the Court's previous order. (Dkt. no. 57 at 7.)

To recover for negligent infliction of emotional distress under Nevada law, Plaintiff must establish that he either suffered a physical impact or "serious emotional distress" causing physical injury or illness. *See Olivero v. Lowe*, 995 P.2d 1023, 1026-27 (Nev. 2000). To recover for intentional infliction of emotional distress, Plaintiff must show that he suffered "extreme or severe" emotional distress. *See Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998) (citation omitted).

In its previous order, the Court found that the Complaint's allegation that Plaintiff "is 'unable to sleep'" and "'has suffered emotional and physical distress'" only amounts to a mere "recitation of the elements without factual support." (Dkt. no. 31 at 12.) The FAC

1   adds that Plaintiff "saw counselors five times and was prescribed medication for the

2   symptoms of his distress." (Dkt. no. 45 at 25-26.) Accepting as true that Plaintiff saw

3   counselors and was prescribed medication to address his emotional distress, the Court

4   finds that Plaintiff has stated a cause of action for negligent infliction of emotional

5   distress. However, the FAC does not allege any new facts to support Plaintiff's

6   intentional infliction of emotional distress claim. The FAC only makes the conclusory

7   assertion that Plaintiff's emotional distress was "severe." (*Id.* at 26.) The Court cannot

8   conclude from the factual allegations, including the allegation that Plaintiff saw

9   counselors and was prescribed medication, that Plaintiff's emotion distress was extreme

10  or severe.

11      As the deficiency in the Complaint was not remedied, Plaintiff's intentional

12  infliction of emotional distress claim is dismissed with prejudice. Defendant's request for

13  dismissal is denied as to Plaintiff's negligent infliction of emotional distress claim.

14  **IV.   CONCLUSION**

15      The Court notes that the parties made several arguments and cited to several

16  cases not discussed above. The Court has reviewed these arguments and cases and

17  determines that they do not warrant discussion as they do not affect the outcome of

18  Defendant's Motion.

19      It is hereby ordered that Defendant's Motion to Dismiss (dkt. no. 57) is granted in

20  part and denied in part. The FAC's third, fifth, and sixth claims for relief are stricken.  The

21  FAC's first, fourth, and eighth claims for relief are dismissed with prejudice. The FAC's

22  second claim for relief, retaliation, and seventh claim for relief, negligent infliction of

23  emotional distress, may proceed.

24      DATED THIS 13th day of August 2015.

25

26

27      _____
        MIRANDA M. DU
        UNITED STATES DISTRICT JUDGE

28

14